**In the United States District Court
for the Northern District of Illinois
Eastern Division**

| | |
|---|---|
| Kuiper Ventures LLC, | |
| Plaintiff, | Case No. 25-cv-14400 |
| v. | JURY TRIAL DEMANDED |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A, | Dist. Judge Jeffrey I. Cummings<br><br>Mag. Judge Jeffrey T. Gilbert |
| Defendants | |

**SUPPLEMENTAL BRIEF ON PROPRIETY OF ELECTRONIC SERVICE**

Plaintiff, Kuiper Ventures LLC, by and through its counsel Jonathan L.A. Phillips, of **Phillips & Bathke, P.C.**, provides this Supplemental Brief under the Court's February 4, 2026 Minute Entry. (Doc. 16).

## I. INTRODUCTION

*Smart Study* is an unpersuasive outlier that should not be followed. The opinion relies heavily on dicta from Supreme Court cases that did not address the interplay between Federal Rule of Civil Procedure 4(f)(3) and the Convention, the issue presented here. And it ignores contrary appellate authority from the Fifth, Ninth, and Federal Circuits, let alone fifteen years of well-reasoned district court decisions.

Even so, the Convention applies only when judicial documents are 'transmitted abroad.' Electronic service to U.S.-based platforms involves no such transmission. This threshold issue avoids the need to weigh *Smart Study's* outlier status. Second, *Smart Study* is simply unpersuasive. Third, adopting it and undermining judicial discretion harms not only Schedule A plaintiffs, but all plaintiffs with a wrongdoer overseas.

## II. ARGUMENT

A. <u>Threshold: Amazon is Not in China</u>

Article I limits the Convention to service "abroad." Convention, Art. I; *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988). That territorial limitation is fundamental. If a judicial document is not transmitted abroad, the Convention does not apply. This argument was not advanced at the Second Circuit, but it is outcome-dispositive here. This independent reason for allowing electronic service avoids the need to judge *Smart Study* against other more persuasive decisions.

The Supreme Court in *Volkswagenwerk,* a case relied on by *Smart Study*, considered a suit against a German company, served through a U.S. subsidiary under Illinois law. *Id*. at 696-97. The German company objected, arguing Convention service was necessary.

1

The Supreme Court ruled that because Illinois's long-arm statute permitted substitute service through the U.S.-based subsidiary, and that such service was not abroad, the Convention did not apply. *Id.* at 706-08. If one can serve without transmitting abroad, then the Convention is not implicated.

Here, the motion focuses on service through ecommerce platforms, the approach most likely to provide notice because that is where Defendant does business. Email is secondary. The platform is Amazon. In Seattle, Washington. The primary mode of electronic service requested is via the platform. In the U.S., not abroad. Service is a message sent to a U.S. location that a Defendant can retrieve from the U.S. While Plaintiff does not contend platforms are agents for service as Illinois law provided in *Volkswagenwerk*, the absence of any foreign transmission ends the Convention inquiry.

B. *Smart Study* Is an Outlier Overstating the Convention's Exclusivity

*Smart Study* strains to overstate the Convention's exclusivity, relying heavily on dicta from inapplicable authority, reaching a conclusion rendering it an outlier.

Three other Circuits disagree with *Smart Study*. Rule 4(f)(3) service is "as favored as service available under Rule 4(f)(1)." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002); *see also Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590, at *6-7 (Fed. Cir. 2022) (no requirement to try Convention service before allowing email service); *Viahart, L.L.C. v. GangPeng*, No. 21-40166 (JEF), 2022 U.S. App. LEXIS 3974, at *3 (5th Cir. Feb. 14, 2022) (Convention "does not displace subsection (f)(3)"). That *Smart Study* failed to address contrary appellate authority undermines its persuasive value.[1]

---

[1] Nor did it address other district court authority other than *Sulzer Mixpac AG v. Medenstar Indus.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015) as "clearly misconstrue[ing]" the Convention. But it did so based on

2

*Smart Study* extedended both *Volkswagenwerk* and *Water Splash* to reach outlier status. Neither addressed the implications of Rule 4(f), rendering them of minimal value in considering the interplay between the Convention and Rule 4(f). Second, *Smart Study*'s heavy reliance on *Water Splash* to conclude the Convention's specification of certain means of service preempts inconsistent means is fundamentally flawed. *Smart Study Co., Ltd.*, 2025 U.S. App. LEXIS at *14-15 (*quoting Water Splash v. Menon*, 581 U.S. 271, 273 (2017)). The language *Smart Study* relied upon, "is quintessential dicta." *Patrick's Rest., LLC v. Singh*, No. 18-cv-00764 (ECT/KMM), 2019 U.S. Dist. LEXIS 2535, at *7 (D. Minn. Jan. 7, 2019) (allowing alternative service and rejecting argument based on same portion *Water Splash* relied on by Second Circuit).

C. Trial Court Discretion Must Be Preserved

Rule 4(f) lists three service methods without hierarchy: (1) internationally agreed means, (2) methods prescribed by foreign law, and (3) court-directed means not prohibited by international agreement. The Ninth Circuit confirmed these are "three separate, alternative provisions, any of which" a plaintiff may use. *Rio Properties*, 284 F.3d at 1015. The last allows for judicial discretion.

Securing the ability to serve service alternatively requires presenting the reasons for the same to a court and securing court approval. Fed. R. Civ. P. 4(f)(3). If unconvinced, the court can refuse: Nothing about alternative service is automatic.

---

the dicta described below. And it failed to square up to over a decade of authority allowing allowing electronic service to Anguilla-, Antigua-, Canada-, Panama-, and Thailand-based defendants. *Facebook, Inc. v. Banana Ads, LLC,* 2012 U.S. Dist. LEXIS 42160, at *11 (N.D. Cal. Mar. 27, 2012) (collecting cases); *see also FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) (allowing electronic service to India because no objection to the means and the defendants controlled the email and social media accounts to conduct business); *WhosHere, Inc. v. Orun*, 2014 U.S. Dist. LEXIS 22084, at *6 (E.D. Va. Mar. 31, 2014) (collecting cases to conclude it was "well established" there was no Rule 4(f) heierachy and allowing electronic service to Turkey).

*Smart Study* guts this discretion. If China refuses to cooperate with Convention service for years, *Smart Study* leaves courts powerless. Trial court discretion also addresses one of *Smart Study's* policy concerns. Where a signatory efficiently processes service, courts may decline alternative service. The Court is not obligated to authorize electronic service. *Smart Study's* other concerns are also easily disposed of.

D. <u>Worries About Overuse of Electronic Service are Misplaced</u>

The *Smart Study* opinion suggests that if email service were allowed, then no one would bother with Convention service. *Smart Study,* 2025 U.S. App. LEXIS at *15. This discounts the ability of district judges to make informed, reasoned decisions. *Supra.*

Additionally, the Supreme Court already pointed out that forgoing Convention service risks enforcement difficulties abroad. *Volkswagenwerk*, 486 U.S. at 705. This is precisely why many will use Convention service "outside the scope of its mandatory application." *Id.* at 706. This addresses *Smart Study's* surplusage concern: the Convention's provision allowing contracting states to create alternative service means is not superfluous because such agreements ensure judgment enforceability abroad. Electronic service to Lisbon? Better hope Portuguese courts will enforce your judgment.

Schedule A cases involve defendants selling infringing goods *in the U.S.*, on platforms *in the U.S.*, to consumers *in the U.S.*, with funds *in the U.S.* The only non-U.S. element is the purported location of a defendant: often a drop-shipping middleman. If a judgment is secured after alternative service and assets are in the U.S., they can be collected. But if you want to collect abroad or address overseas matters, Convention service may be necessary.

4

E. The Practical Implications Are Devastating

*Smart Study* undermines not only intellectual property protection but anyone's ability to secure meaningful relief against Chinese-based defendants. China "simply refuses to cooperate" and that Convention service involves multi-year "delays." *Smart Study*, 2025 U.S. App. LEXIS 33039, at *4. At a minimum, China cannot "effectively regulate" what amounts to 80% of the world's counterfeits. *Id*. at *19. China has built an apparatus rendering Convention service meaningless.

Beyond Schedule A cases: should a Chinese manufacturer flood U.S. commerce with lead-tainted toys, families would face the "Great Legal Wall of China" and be unable to meaningfully begin litigation for years: well after funds for assistance to address childhood lead exposure are needed. Chinese entities are effectively inoculated from providing meaningful relief to U.S. plaintiffs.

If China meaningfully participated in the Convention, it might not be as "costly" and "slow" as the *Smart Study* court noted. If judicial discretion is preserved, Courts can consider this (and whether things improve) when deciding on alternative service. For now, there is something perverse in straining to reach conclusions and gutting judicial discretion to benefit counterfeiters due to a treaty that China has weaponized.

### III. CONCLUSION

As explained above, and in the previously filed Memorandum In Support of the Motion for Leave to Serve by Alternative Means (Doc. 8), this Court should authorize electronic service via the platforms and email in this case.

Respectfully submitted,
KUIPER VENTURES, LLC, by

s/ Jonathan L.A. Phillips
Jonathan L.A. Phillips (IL 6302752)
**Phillips & Bathke, P.C.**
300 Northeast Perry Avenue
Peoria, Illinois 61603
(309) 643-6518
jlap@pb-iplaw.com